# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| W.H., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 352 M.D. 2021 |
| | : | Submitted: October 25, 2024 |
| Commonwealth of Pennsylvania and | : | |
| Pennsylvania State Police, | : | |
| Respondents | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: December 23, 2024

Before this Court in our original jurisdiction are W.H.'s (Petitioner), pro se, Petition for Review[1] (Petition) challenging the constitutionality of Pennsylvania's Sexual Offender Registration and Notification Act[2] (SORNA) and an Application

---

[1] The document Petitioner filed was named "Motion for Temporary Restraining Order Leading to Permanent Injunction to Cease and Desist Any and All Further Sex Offender Registrations Under Commonwealth and Federal Laws As being Federally Unconstitutional," which the Court treated as a Petition for Review directed to its original jurisdiction pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, and Pennsylvania Rule of Appellate Procedure 1502, Pa.R.A.P. 1502.

[2] 42 Pa.C.S. §§ 9799.10-9799.42, 9799.51-9799.75. The previous version of SORNA was originally enacted on December 20, 2011, effective December 20, 2012. *See* Act of December 20, 2011, P.L. 446, No. 111, § 12, effective in one year or December 20, 2012 (SORNA I). SORNA I was amended on July 5, 2012, also effective December 20, 2012, *see* Act of July 5, 2012, P.L. 880, No. 91, effective December 20, 2012 (Act 91 of 2012), and amended on February 21, 2018, effective immediately, known as Act 10 of 2018, *see* Act of February 21, 2018, P.L. 27, No. 10, §§ 1-20, effective February 21, 2018 (Act 10 of 2018), and, lastly, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 (Act 29 of 2018). Acts 10 and 29 of 2018 are generally referred to collectively as SORNA II. Through Act 10, as amended in Act 29, the General Assembly split SORNA I's former Subchapter H into a revised Subchapter H and
**(Footnote continued on next page…)**

for Summary Relief[3] (Application). Petitioner argues SORNA violates the due process clauses and equal protection clauses of the United States and Pennsylvania Constitutions, found, respectively, in the Fourteenth Amendment, U.S. CONST. amend. XIV, and article I, sections 1 and 26, PA. CONST. art. I, §§ 1, 26. Based on our Supreme Court's recent decision in *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024) (*Torsilieri II*), Petitioner cannot establish a clear right to judgment as a matter of law and, therefore, we deny the Application.

## I.    THE PLEADINGS

At the time of filing of the Petition, Petitioner was an inmate at Cumberland County Prison serving the remainder of a federal sentence. (Petition at 2.) In Petitioner's later filed "Motion for Immediate Hearing on Petition and Rule to Show Cause" (Motion),[4] he explains that he was previously at a halfway house in Harrisburg at which time Petitioner was taken to a Pennsylvania State Police (PSP) barracks to register as a sex offender. (Motion ¶ 4.) After violating the halfway house's rules, Petitioner was transferred to the Cumberland County Prison to serve the remainder of his sentence. (*Id.* ¶ 5.) With the assistance of Cumberland County Prison staff, Petitioner changed his address with PSP to that of the prison and his

---

Subchapter I. Subchapter I of SORNA II applies to sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012, whose registration period under a prior act had not yet expired. *See* 42 Pa.C.S. §§ 9799.51-9799.75. Revised Subchapter H of SORNA II applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S. §§ 9799.10-9799.42.

[3] Petitioner titled his Application as a "Motion for Summary Judgment Pursuant to Pennsylvania Rule of Civil Procedure 1035.2," which this Court treats as an application for summary relief under Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b) ("At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear.").

[4] The Court denied the Motion on January 11, 2022, because the pleadings were not closed and no application for relief was pending at that time.

employment status to unemployed as required by SORNA. (*Id.* ¶ 6.) Petitioner then filed the instant Petition seeking a "temporary restraining order" ordering the PSP "to cease and desist its federally un-constitutional actions of registration and publication of sex offender's information on the [PSP] website, immediately, and remove the contents of the website from public view forever in the future."[5] (Petition at 2.)

Petitioner avers that the registration requirements and publication of information under SORNA violates the due process clauses of both the United States Constitution and the Pennsylvania Constitution, specifically article I, sections 1 and 26 of the Pennsylvania Constitution. (Petition ¶ 3.) Petitioner argues that sexual offenders are a "politically unpopular group" and that the United States Supreme Court has ruled that a state's laws cannot aim to "harm a politically unpopular group." (*Id.* (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973)).) Petitioner expands upon the Petition, explaining that this notion has protected several "politically unpopular groups" from harmful legislation, and "this logic" is "not out of line and in accord" for sexual offenders as well. (Motion ¶ 17.) Petitioner explains that he has several college degrees, including a graduate degree in business, several educational certificates, and two apprenticeships with the United States Department of Labor, and he could not obtain a professional position while at the halfway house in Harrisburg. (*Id.* ¶ 20.) Petitioner believes that his designation as a sexual offender prevented him from obtaining a professional position, resulting in irreparable harm. (*Id.*)

The Commonwealth of Pennsylvania (Commonwealth) and PSP (together, Respondents) filed an Answer and New Matter. Respondents generally aver that the

___

[5] The Petition was initially filed with the Court of Common Pleas of Cumberland County, which transferred it to this Court.

Petition contains conclusions of law that do not require a response and generally deny any factual averments made to the extent that Petitioner presented any. In their New Matter, Respondents explain that Petitioner is subject to the amendments in SORNA, the amendments do not constitute criminal punishment but rather create a civil registration system, and neither they, nor the courts, have the authority to alter the requirements set forth therein. (New Matter ¶¶ 3-5 (citing 42 Pa.C.S. § 9799.23(b)(2) (prohibiting judicial alterations to the registration requirements)).) Further, Respondents assert that Petitioner has not provided any evidence to "rebut the presumption that adult sexual offenders have a high rate of recidivism" and that the registration and publication requirements are narrowly tailored to address that risk thereby making them constitutional. (*Id.* ¶¶ 7, 21.) They also assert these requirements are mandated by federal law, namely the Adam Walsh Child Protection and Safety Act of 2006[6] (Adam Walsh Act), and the Commonwealth risks its ongoing receipt of federal funding if the requirements are not present. (*Id.* ¶¶ 8-13.) According to Respondents, the Petition fails to state a claim upon which relief can be granted because SORNA does not violate the United States or Pennsylvania Constitutions. (*Id.* ¶¶ 15, 18.) Respondents also contend that Petitioner's claims are barred by res judicata, laches, collateral estoppel, and sovereign immunity. (*Id.* ¶¶ 16-17, 19-20.)

Petitioner filed an Answer to the New Matter, observing that Respondents did not address his claim that the legislature cannot pass legislation with the intent to harm an unpopular group as set forth in *Moreno*, which includes sexual offenders as recognized in *Commonwealth v. Torsilieri*, 232 A.3d 567, 596 (Pa. 2020)

---

[6] 34 U.S.C. §§ 20901-20962.

4

(*Torsilieri I*).[7]  (Petitioner's Answer to New Matter ¶¶ 1-6.)  Relying on language from *Torsilieri I* and *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), as well as new statistics, Petitioner maintains the recidivism risk is not nearly as high as presumed and that his recidivism risk is very low as determined by the Federal Bureau of Prisons.  (*Id.* ¶¶ 7-8, 15, 22-23, 35-36, 39.)  Petitioner disputes that there is no "punishment" purpose in SORNA because criminal sanctions are applicable if SORNA's requirements are not met.  (*Id.* ¶ 16.)  Petitioner contends SORNA, and the Adam Walsh Act, reflect the legislatures' creation of a politically unpopular group and intent to harm that group through those statutes, which is unconstitutional and does not reflect a legitimate government interest.  (*Id.* ¶ 30.)  As to the other affirmative defenses raised by Respondents, Petitioner contends they are inapplicable to the Petition.[8]  (*Id.* ¶¶ 31-32.)

## II.   THE APPLICATION AND PARTIES' ARGUMENTS

Petitioner filed the Application, requesting that the Court read his pleadings liberally and grant summary relief on his behalf based on Respondents' lack of

---

[7] Petitioner also notes that Respondents' Answer and New Matter was untimely filed. However, Pennsylvania Rule of Appellate Procedure 105(a) provides that the rules are to be liberally applied, Pa.R.A.P. 105(a), and "this Court may accept a late pleading as justice requires and where the opposing party suffers no prejudice," *Humphrey v. Department of Corrections*, 939 A.2d 987, 991 (Pa. Cmwlth. 2007).  Because Respondents' Answer and New Matter was only two days tardy and Petitioner has not shown he was prejudiced by that late filing, we will accept the late filed Answer and New Matter.  *Id.*

[8] Petitioner attempts to add a new claim, a violation of article I, section 29 of the Pennsylvania Constitution, PA. CONST. art. I, § 29, asserting that sexual offenders are "minorities" who are being discriminated against.  (Petitioner's Answer to New Matter ¶¶ 13, 21.)  However, Petitioner does not explain how sexual offenders, as a class, fall within the protections of that constitutional provision, which states:  "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the **race** or **ethnicity** of the individual."  PA. CONST. art. I, § 29 (emphasis added).

defense or scientific evidence supporting a defense.[9] (Appl. at 1 & ¶ 1.) Petitioner reiterates that the United States Supreme Court has concluded in 26 cases that "politically unpopular groups" are protected by the concept of equal protection and that a legislative intent to harm such groups is not a legitimate governmental interest. (Appl. ¶ 2(A)-(Z).) Petitioner claims these cases support his argument that SORNA is unconstitutional.

In their brief opposing summary relief, Respondents set forth the history of SORNA and the complex litigation leading to its current iteration. Respondents argue that Petitioner has "abandoned any due process argument, as it is completely absent from his Application," and Petitioner merely cites 26 United States Supreme Court cases that reference politically unpopular groups. (Respondents' Brief (Br.) at 5-6.) Respondents explain that none of the cases Petitioner cites concern sexual offender registries, the only case that discusses sexual offenders is not relevant to Petitioner's arguments, and in many of those cases the petitioners were not even granted relief. As for the alleged equal protection violation, Respondents assert Petitioner has not shown that sexual offenders are a suspect class, nor has he shown that he has been treated differently than similarly situated people. Therefore, Respondents assert that the Application should be denied.

Petitioner filed a responsive brief, arguing that he cited the 26 United States Supreme Court cases not because they applied or because the petitioners prevailed therein, but "to show that individuals such as [] Petitioner, who represent[] the politically unpopular minority group called 'sex[ual] offenders' . . . [are] similarly situated to other racial and minority groups . . . when it comes to seeking equality and due process." (Petitioner's Br. ¶ 2.) Petitioner explains that the legislature

---

[9] Respondents did not file a cross-application for summary relief.

6

cannot desire "to harm a politically unpopular group" and that desire "cannot constitute a legitimate governmental interest." (*Id*. ¶ 3 (quoting *Moreno*, 413 U.S. at 534).) Thus, as sexual offenders are politically unpopular groups, Petitioner contends they deserve "to be given equal rights and protections." (*Id*.) Petitioner maintains "that sex[ual] offenders have one of the lowest, if not the lowest, recidivism rate of any group of former felons over both the short term and the long term for new sex[ual] offenses." (*Id*. ¶ 4.) Although sexual offenders "may reoffend for other types of crimes," Petitioner argues the rate of recidivism "for another sex[ual] offense . . . is extremely low." (*Id*.) Petitioner contends that when sexual offenders are released from prison, most "only want to attempt to blend back into society as productive citizens, but the registration scheme deprives them of both privacy and the ability to obtain good paying jobs or housing in nice neighborhoods, as a continual shunning of them by society today." (*Id*. ¶ 6.) Petitioner further argues that "sex[ual] offender [registration] statutes resemble probation." (*Id*. ¶ 8 (citing *Lacombe*, 234 A.3d at 627 (Mundy, J., concurring)).) Petitioner disputes that SORNA has a nonpunitive purpose. (Petitioner's Answer to New Matter ¶ 16.) Petitioner summarizes that SORNA violates Petitioner's right to "reputation[]" and is thus unconstitutional. (Petitioner's Br. ¶¶ 9, 11.)

Following the parties' principal briefing, the Supreme Court issued its decision in *Torsilieri II*, in which the Court reversed a court of common pleas' decision and upheld the constitutionality of SORNA in the face of challenges that the presumption that adult sexual offenders pose a higher risk of recidivism violates due process, that SORNA's notification and registration requirements infringe one's reputational interests in violation of substantive due process, and that those requirements are punitive in nature. The Court permitted the parties to file

7

supplemental memoranda of law to address *Torsilieri II* and the impact, if any, that decision has on the claims here. Petitioner did not file a supplemental memorandum of law. Respondents did so, in which it reiterated that Petitioner's arguments are conclusory and that if Petitioner has not abandoned his due process argument by not asserting it in the Application, *Torsilieri II* has effectively disposed of that issue by rejecting the appellee's substantive due process challenge to SORNA there.

## III. DISCUSSION

Petitioner seeks summary relief on his claims that SORNA violates due process and equal protection and that, for this reason, he should not be required to register as a sexual offender. An application for summary relief may be filed pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), at any time after the filing of a petition for review. Summary relief is properly granted where "the pleadings, depositions, answers to interrogatories, and admission[s] on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Ducjai v. Dennis*, 656 A.2d 102, 113 (Pa. 1995). Summary relief "will be denied where material facts are in dispute[,] or the applicant is not clearly entitled to judgment as a matter of law." *Allen v. Pa. Bd. of Prob. & Parole*, 207 A.3d 981, 984 n.4 (Pa. Cmwlth. 2019). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991). Summary relief may be entered only in those cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 562 A.2d 279, 280 (Pa. 1989).

Reviewing Petitioner's filings, it is difficult to discern the specific bases on which he is asserting his constitutional challenges. While Petitioner cites 26 United Supreme Court cases for the principle that a legislature's intent to harm or punish a politically unpopular group cannot be a legitimate governmental interest that will defeat an equal protection challenge, and analogizes sexual offenders to the groups at issue in those cases,[10] he also acknowledges that the comparison group did not

---

[10] *Kincaid v. Williams*, 600 U.S. __, 143 S.Ct. 2414 (2023) (denying *certiorari* in case involving gender dysphoria and a suit against a county sheriff for not providing accommodations at a detention center relating to that condition); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (holding that website designer could not be made to develop a wedding website for a same sex couple as doing so would be contrary to the designer's religious beliefs); *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) (holding that it was unlawful for an employer to discriminate against employees based on being homosexual or transgender); *Gundy v. United States*, 588 U.S. 128 (2019) (holding that a provision of the Adam Walsh Act that authorized the United States Attorney General to specify that act's registration requirements to sexual offenders who were convicted of sex offenses prior to its enactment did not violate the nondelegation doctrine); *Trump v. Hawaii*, 585 U.S. 667 (2018) (reversing preliminary injunction against implementation of Presidential Proclamation that prohibited entry to the United States by foreign nationals from six predominantly Muslim countries); *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) (holding state law requiring abortion providers to have admitting privileges to a hospital within 30 miles of their abortion facility and for such facility to meet the standards for ambulatory surgical centers was unconstitutional), *overruled in part by Dobbs v. Jackson Women's Health Org.* 597 U.S. 215 (2022); *United States v. Windsor*, 570 U.S. 744 (2013) (upholding determination that exclusion from spousal deduction for federal estate tax purposes of same sex spouses was unconstitutional); *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) (holding a state's redistricting of congressional districts resulted in voter dilution); *Lawrence v. Texas*, 539 U.S. 558 (2003) (striking as unconstitutional a state law making it a crime for people of the same sex to engage in certain intimate sexual conduct); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (suit by state employees with disabilities claiming discrimination based on their disabilities and seeking money damages found to be barred by Eleventh Amendment, U.S. CONST. amend. XI, state immunity); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (concluding federal courts lacked jurisdiction over suit by resident aliens challenging their being targeted for deportation based on their membership to a pro-Palestinian group in violation of the United States Constitution); *Printz v. United States*, 521 U.S. 898 (1997) (holding requiring county sheriffs to perform background checks for firearms under federal law was unconstitutional for violating sovereignty principles); *Romer v. Evans*, 517 U.S. 620 (1996) (holding state constitutional amendment prohibiting legislative, executive, or judicial action **(Footnote continued on next page…)**

9

always win and "not all of [those cases] apply in this case." (Petitioner's Br. ¶¶ 2-3, 10; Appl. ¶ 2; Petition at 2-4.) Petitioner also appears to challenge the universality of the presumption that sexual offenders have a high rate of reoffense and the alleged nonpunitive nature of SORNA, and additionally argues that his right to reputation is

designed to protect homosexual persons from discrimination violates equal protection); *Lyng v. Int'l Union*, *United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 485 U.S. 360 (1988) (holding statute precluding eligibility for or increase in food stamps for households in which a union member is on strike did not violate equal protection and freedom of association principles); *Lyng v. Castillo*, 477 U.S. 635 (1986) (determining the statutory distinction between parents, children, and siblings, and all other groups of individuals, the latter of which receive less food stamp benefits did not violate due process); *Wright v. New Jersey*, 469 U.S. 1146 (1985) (dismissal of appeal from state supreme court decision upholding a state criminal statute relating to the carrying of an "exacto" knife against a vagueness challenge for want of federal question); *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (upholding finding a local zoning ordinance unconstitutional on equal protection grounds where it required a special use permit for a group home for individuals with mental retardation as it was based on an irrational prejudice against those individuals); *Rhodes v. Chapman*, 452 U.S. 337 (1981) (upholding prison policy relating to double celling inmates against a challenge brought by prisoners claiming it constituted cruel and unusual punishment); *New York City Transit Auth. v. Beazer*, 440 U.S. 568 (1979) (finding that a prohibition against employing individuals who regularly use narcotics, including methadone, did not violate equal protection); *Mathews v. Diaz*, 426 U.S. 67 (1976) (holding requirement of permanent resident status and length of residence status for eligibility for Medicare Part B supplemental insurance did not violate due process); *Weinberger v. Salfi*, 422 U.S. 749 (1975) (upholding statutory provision limiting Social Security widow's benefit and stepchildren's benefit to those in that relationship with a deceased wage earner for more than nine months before his death against due process challenge); *Johnson v. Robison*, 415 U.S. 361 (1974) (holding system of veterans' education benefits that excluded conscientious objectors did not violate their rights of religious freedom and equal protection); *Moreno*, 413 U.S. 528 (statute excluding from participation in the food stamp program households in which a member is unrelated to the other members unconstitutional violated equal protection by creating an irrational classification); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405 (1973) (recipients of public assistance benefit challenged state work requirements as being preempted by federal work requirements and the court found no preemption); *U.S. v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123 (1973) (decision upholding the constitutionality of statute prohibiting the importation of obscene matter and forfeiture of such matter against freedom of constitutional speech challenge); and *Jefferson v. Hackney*, 406 U.S. 535 (1972) (holding a state system's allocation of benefits for one program, used more by minorities, that differed from other programs, did not violate equal protection). Many of the references to politically unpopular groups or minorities occurred in the dissenting or concurring opinions.

infringed by SORNA. (Petitioner's Br. ¶¶ 4, 8,11; Petitioner's Answer to New Matter ¶¶ 4-8, 12-16, 21-24, 29-30, 35-36, 39.) Upon review, Petitioner has not established an "entitle[ment] to judgment as a matter of law," *Ducjai*, 656 A.2d at 113, particularly after the Supreme Court upheld the constitutionality of Subchapter H of SORNA in *Torsilieri II*.[11]

Statutes carry "a strong presumption of constitutionality, which will not be overcome unless the legislation is 'clearly, palpably and plainly' in violation of the Constitution." *Torsilieri II*, 316 A.3d at 86. The "party challenging legislation as unconstitutional bears a heavy burden, and all doubts are to be concluded in favor of a finding of constitutionality." *Id.* In examining "constitutional challenges to legislative enactments, we are ever cognizant that 'the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society,' but also that 'any restriction is subject to judicial review to protect the constitutional rights of all citizens.'" *Id* at 91 (quoting *In re J.B.*, 107 A.3d 1, 14 (Pa. 2014)).

In *Torsilieri II*, our Supreme Court rejected claims, like those Petitioner appears to assert here, that Subchapter H of SORNA violates the constitutional rights of registrants, including their due process right to their reputation, through the use of an irrebuttable presumption and the registration and publication requirements. That Court found the reputational challenge based on the registration and publication requirements to be synonymous with the challenge to the irrebuttable presumption that sexual offenders pose a high risk of reoffense, reasoning that the two were "inextricably intertwined," and analyzed the two as one. *Torsilieri II*, 316 A.3d at 89, 92. The language at issue in both *Torsilieri II* and here is the General Assembly's

---

[11] The Supreme Court upheld the constitutionality of Subchapter I in *Lacombe*, 234 A.3d 602.

11

finding that "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9799.11(a)(4).

In concluding that this presumption, "which largely undergirds the criminal justice system's treatment of sex offenders," was not impermissible, the Supreme Court examined the history and current iteration of that doctrine, the evidence presented before the trial court, and the purpose and legislative intent behind SORNA. *Torsilieri II*, 316 A.3d at 79-80, 92-100. The high court reasoned that "[t]o overturn the legislative presumption that sex offenders are more likely as a group to commit new sex offenses," Torsilieri was "required to establish that there exists a scientific consensus that sexual offenders pose no greater risk of committing additional sexual crimes than other groups not subject to similar registration laws." *Id*. at 98-99. However, Torsilieri's own experts had conceded that "adult sexual offenders reoffend at a rate of at least three times higher than other individuals convicted of non-sexual offenses." *Id*. at 99. Because this evidence supported, rather than refuted, the presumption, the Court concluded that Torsilieri did not meet "his heavy burden to demonstrate that the irrebuttable presumption at issue was constitutionally infirm." *Id.* at 100. Based on the Supreme Court's determination in *Torsilieri II* that Subchapter H of SORNA is **not** unconstitutional for the above reasons, which are the **same** as some of those Petitioner asserts in his filings, Petitioner has not clearly and without doubt established that he has a clear right to judgment as a matter of law on those claims. *Ducjai*, 656 A.2d at 113; *Musser*, 562 A.2d at 280.

Petitioner's claim challenging the alleged nonpunitive nature of SORNA fairs no better under *Torsilieri II*. The second issue in *Torsilieri II* was Torsilieri's claim

12

that the registration and notification requirements were punitive in nature and unconstitutional for, among other reasons, being cruel and unusual in violation of the Eighth Amendment to the United States Constitution, U.S. CONST., amend. VIII. 316 A.3d at 100. The Court analyzed this question using the *Mendoza-Martinez* factors outlined in the United States Supreme Court decision of *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). After examining Subchapter H, including changes that had been made to SORNA after it had previously been found to be punitive in nature and an unconstitutional *ex post facto* law in part by our Supreme Court in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (plurality), and balancing the *Mendoza-Martinez* factors, the Court reached the opposite conclusion in *Torsilieri II*, 316 A.3d at 109-10. It concluded that Torsilieri had "not me[]t his heavy burden, by the clearest of evidence, to rebut the General Assembly's stated non[]punitive purpose" for Subchapter H of SORNA. *Id. See also Lacombe*, 234 A.3d at 609 (holding Subchapter I was not punitive). Thus, to the extent Petitioner's filings can be read as asserting that Subchapter H (or SORNA as a whole) is punitive in nature, he has not clearly and without doubt established that he has a clear right to judgment as a matter of law on those claims, *Ducjai*, 656 A.2d at 113; *Musser*, 562 A.2d at 280, given our Supreme Court's contrary conclusion.

This leaves Petitioner's contention that SORNA is unconstitutional because a legislature's **intent** to **harm** a politically unpopular group or minority, which he maintains SORNA is intended to do, is not a legitimate governmental interest that can allow for the disparate treatment of individuals. "Equal protection is the constitutional principle that 'like persons in like circumstances will be treated similarly' under the law." *M.T. v. Pa. State Police*, 298 A.3d 466, 472 (Pa. Cmwlth. 2023) (quoting *Doe v. Miller*, 886 A.2d 310, 315 (Pa. Cmwlth. 2005)). The Equal

13

Protection Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV. Article I, sections 1 and 26 of the Pennsylvania Constitution provide the basis for equal protection under state law. PA. CONST. art. I, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights."); PA. CONST. art. I, § 26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."). The equal protection provisions of the Pennsylvania Constitution are analyzed "under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment . . . ." *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991).

The right to equal protection under the law does not prohibit the Commonwealth from classifying individuals for the purpose of different treatment, and it does not require equal treatment of people having different circumstances. *Curtis v. Kline*, 666 A.2d 265, 267-68 (Pa. 1995) (citations omitted). "In general, economic and social legislation, including legislation creating classifications or categories among criminal offenders, receives rational basis review." *Jackson v. Commonwealth*, 143 A.3d 468, 474 (Pa. Cmwlth. 2016). The rational basis test requires a two-step analysis: the Court first determines whether the challenged statute seeks to promote a legitimate state interest and, if it does, then the legislative classification must be found reasonably related to accomplishing that articulated state interest. *Kramer v. Workers' Comp. Appeal Bd. (Rite Aid Corp.)*, 883 A.2d 518, 534 (Pa. 2005).

Petitioner is correct that the United States Supreme Court has held that "the Constitution's guarantee of equality must at the very least mean that **a bare congressional desire to harm** a politically unpopular group **cannot** constitute a **legitimate** governmental interest." *Moreno*, 413 U.S. at 534 (emphasis added). However, Petitioner's premise that the intent behind SORNA is to harm or punish sexual offenders is flawed, as it has been rejected by our own Supreme Court in *Torsilieri II*, 316 A.3d at 109-10 (Subchapter H), and *Lacombe*, 234 A.3d at 626-27 (Subchapter I). As the Court stated in *Torsilieri II*, "Subchapter H offer[s] a valid **nonpunitive** purpose of **informing and protecting the public**" from sexual offenders, 316 A.3d at 109-10 (emphasis added), and in *Lacombe*, "the purpose of Subchapter I is to '[p]rotect the safety and general welfare of the people** of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who . . . and will live in or near their neighborhood,'" which was a nonpunitive purpose, 234 A.3d at 618, 626-27 (citing 42 Pa.C.S. § 9799.51(b)(1)) (emphasis added). These do **not** reflect that SORNA's purpose was a "**bare** congressional **desire to harm**" sexual offenders, *Moreno*, 413 U.S. at 534 (emphasis added), and Petitioner's reliance on *Moreno* to argue that there is no legitimate governmental interest for SORNA is misplaced.

Upon review of the purpose stated by the General Assembly, and recognized by our Supreme Court, we cannot say that the goal of promoting community safety is not a legitimate state interest, particularly given the recent decision in *Torsilieri II* upholding the presumption that sexual offenders have a high risk of reoffense. Turning to the second factor of the equal protection analysis, we also cannot say that SORNA's registration and notification requirements do not bear a "rational

15

relationship to the stated goal of promoting community safety" and are not aimed at achieving that purpose. *Torsilieri II*, 316 A.3d at 109. *See also Lacombe*, 234 A.3d at 609 (holding that "Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public"). Therefore, Petitioner has not clearly and without doubt established that he has a clear right to judgment as a matter of law on his equal protection claims, *Ducjai*, 656 A.2d at 113; *Musser*, 562 A.2d at 280.

## IV. CONCLUSION

For the forgoing reasons, Petitioner has not met his burden of proving his entitlement to summary relief on any of his claims challenging the constitutionality of SORNA. Therefore, Petitioner's Application is denied.

_____
RENÉE COHN JUBELIRER, President Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W.H.,                                          :
                          Petitioner           :
                                               :
            v.                                 :    No. 352 M.D. 2021
                                               :
Commonwealth of Pennsylvania and               :
Pennsylvania State Police,                      :
                          Respondents           :

# **O R D E R**

**NOW**, December 23, 2024, the "Motion for Summary Judgment Pursuant to Pennsylvania Rule of Civil Procedure 1035.2," filed by Petitioner W.H., which this Court treats as an Application for Summary Relief under Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), is **DENIED**.

_____
RENÉE COHN JUBELIRER, President Judge